IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MEIKO MARTIN, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION No. 24-00442-KD-M |
| | ) | |
| MOBILE COUNTY SHERIFF | ) | |
| PAUL BURCH, individually, | ) | |
|     Defendant. | ) | |

**ORDER**

Plaintiff Meiko Martin was employed as a Fiscal Officer in the Mobile County Sheriff's Office from July 23, 2022 through April 25, 2023. Prior to this employment she had worked at DHR and was terminated.  In four different applications to Mobile County and the Sheriff's Office, she denied or failed to disclose this termination.  Martin was terminated after a hearing wherein the disciplinary panel determined that 1) she had been dishonest in failing to disclose that she had been previously terminated by DHR, and 2) had engaged in acts contrary to the good of the service, which included filing bankruptcy.  Martin claims that Sheriff Paul Burch in his individual capacity committed bankruptcy discrimination and racial discrimination when her employment with the Mobile County Sheriff's Office was terminated.

This action is before the Court on Defendant Mobile County Sheriff Paul Burch's Motion for Summary Judgment and Brief in Support, (doc. 18), Plaintiff Meiko Martin's Response, (doc. 22), and Burch's Reply, (doc. 23). Upon consideration and for the reasons stated below, the Motion is **GRANTED**.

1

I.    **Facts**

**A.  Martin's Employment Applications and Hiring Process**

Meiko Martin ("Martin"), a black woman, submitted four applications of employment for two separate positions with Mobile County. Martin's first employment application was for the position of Fiscal Officer I in the Mobile County Sheriff's Office. The application was submitted to the Mobile County Personnel Board on January 3, 2022. Martin listed the State of Alabama Department of Human Resources ("DHR") as a previous employer. Martin worked as a Financial Support Supervisor while at DHR. Martin stated on her employment application her reason for leaving this position was for "[a] change in career direction and a position that will allow me to utilize my college degrees. Limited to no opportunity for advancement."  (Doc. 17-1 at p. 5). The application asked whether Martin was ever fired from a position to which she answered "no." (Id. at p. 8). All statements on the application were certified by Martin to be true and complete to the best of her knowledge. (Id. at p. 1-11). Martin also certified that she understood any "material misstatement of fact will cause the loss of all rights of employment under the jurisdiction of the Personnel Board of Mobile County." (Id.).

On February 3, 2022, Martin applied for the same position of Fiscal Officer I on an application provided by the Sheriff's Office. (Doc. 17-2). The application asked Martin to list her employment over the last ten years.  Martin did not list her employment with DHR where she was employed from March 1, 2010 to February 2021. (Id. at p. 8-9). Martin also did not state that she had been discharged from any prior employment. (Id. at p. 11). Martin certified that the statements on her application were true and complete, and that she understood any misstatement could disqualify her from employment opportunity or continued employment if the misstatement became known after her employment began. (Id. at p. 18).

2

During the employment application process, a background check was conducted by James Rosier, Jr. ("Rosier") a corporal in the Mobile County Sheriff's Office Internal Affairs division. Rosier contacted Martin's personal references. One of these references informed him of Martin's employment as a Financial Support Supervisor from March 2020 to June 2021, but could not tell Rosier any more information due to DHR policy. (Doc. 17-3 at p. 4); (Doc. 17-16 at p. 6-8). Rosier also discovered Martin twice filed for Chapter 7 Bankruptcy prior to her employment applications. (Doc. 17-3 at p. 7).  Rossier's investigation was summarized in a report dated February 22, 2022.  Soon thereafter, former Mobile County Sheriff Sam offered the position of Fiscal Officer I to Martin with a starting date of April 2, 2022. (Doc. 17-4 at p. 1). Martin declined the offer. (Id.).

On June 9, 2022, Martin applied for the position of Fiscal Services Manager with the Mobile County Sheriff's Office through the Mobile County Personnel Board. (Doc. 17-4 at p. 3-12). This application referenced her employment with DHR, but Martin again denied being fired and stated she left for a career change, to utilize her degrees and because of limited opportunities for advancement with DHR. (Doc. 17-4 at p. 6- 7, 10).

On July 7, 2022, Martin submitted another application for the Fiscal Services Manager position with the Mobile County Sheriff's Office. (Doc. 17-5). In this application, she did not reference her employment with DHR nor any prior termination. (Id. at p. 8-11). Sheriff Cochran hired Martin on July 23, 2022. (Doc. 17-13).

Regarding the omission of her termination from the applications, Martin states that "[a]t the time I completed the MCSO applications, my DHR removal was under appeal, and I believed I had a reasonable chance of being reinstated. My responses reflected my understanding of my employment status at that time and were true to the best of my knowledge. I did not intend to

provide false or misleading information, nor did I omit anything with the purpose of deceiving anyone." (Doc. 22-1 at p. 2).

Martin's employment in the Mobile County Sheriff's Office continued after Defendant Sheriff Paul Burch took office in January 2023. Prior to becoming Sheriff, Burch was the Chief Deputy. Martin avers that she had a conversation with Burch in November 2022 about her prior employment with DHR. In that conversation, Burch indicated he initially didn't want her as Finance Manager because of "a paper" he had received about her prior employment with DHR. (Doc. 22-1 at p. 8)

### B. Erica Adams' Employment with Mobile County Sheriff's Office

Erica Adams ("Adams"), a white woman, worked in the Finance Department of Mobile County Sheriff's Office with Martin. Adams applied to the same Financial Services Manager position as Martin, but ultimately, Martin was hired to the position. Martin was Adams direct supervisor. Finance Director Natasha Neese ("Neese") supervised both Martin and Adams. Neese avers that Adams ignored the chain of command and would go around Martin to higher command on issues. (Doc. 22-2) The conduct referenced by Neese occurred prior to August 5, 2022. When Neese retired from the Sheriff's Department, Adams was promoted to Finance Director to replace Neese. Adams was then Martin's supervisor. Martin's hiring and Adams' promotion occurred before Sheriff Burch's tenure began in January 2023, and are not the subject of this lawsuit.

### C. Martin's Hostile Work Environment Complaint and the Following Investigation

On March 21, 2023, Martin emailed a hostile work environment complaint against Adams to Adams, Sheriff Burch's Chief Deputy Frank Cassady, and Sheriff Burch's Human

Resources Director Cynthia Coleman. (Doc. 17-6).  Rosier was assigned to investigate.  During Rosier's interview of Martin about her complaint, Martin brought up her employment with DHR and indicated that she had a previous problem with a supervisor and had an administrative hearing. (Doc. 17-7 at p. 9).  As a result of this information, Rosier investigated her employment with DHR and discovered she had been terminated on June 4, 2021 for theft of property, abuse of equipment, failure to perform properly, insubordination, and violation of confidentiality of records rules.  (Id.); (Doc. 17-8).   The termination was appealed and was upheld on August 11, 2021 by the State Personnel Board.

On March 28, 2023, Rosier provided a report to Sheriff Burch, which concluded that there was insufficient evidence that Adams had created a hostile environment, and instead it was Martin that had been insubordinate. (Doc. 17-7 at pp. 12-13). Rosier also informed Sheriff Burch that his investigation determined that Martin had obtained her position with the Sheriff's Office by deception in that she willfully and knowingly omitted her employment at DHR on some applications and never disclosed her termination from DHR. (Id. at p. 14).

A disciplinary hearing on Rosier's findings took place on April 24, 2023.  Chief Deputy of Field Operations William A. Peak, Criminal Investigations Captain Terri Hall, and Special Operations Captain Jason Arendall served on the panel for the hearing. (Doc. 17-10).  Martin was charged with: 1) lying and deception by failing to disclose her dismissal from DHR and the reason for the dismissal; and 2) engaging in acts contrary to the good of the service by: omitting relevant information to the handling of large amounts of money; "demonstrating through personal bankruptcies [] and vehicle repossession an ability (sic) to handle financial matters"; and engaging in disruptive behavior including failure to cooperate with her supervisor,

attempting to undermine her supervisor and making unsupported allegations against her supervisor. (Id.)

At the conclusion of the hearing, the panel unanimously found that Martin was guilty of all charges and recommended her termination effective immediately (Id.). Martin was then terminated on April 25, 2023 by Sheriff Burch.  Martin appealed the decision, and the Mobile County Personnel Board upheld her termination on December 19, 2023. (Doc. 17-12).

On November 27, 2024, Martin filed her Complaint against Sheriff Burch in his individual capacity. (Doc. 1). The Complaint brings one count of Bankruptcy Discrimination pursuant to 11 U.S.C. § 525(b), and one count of Racial Discrimination in Violation of the Equal Protection Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1981. (Id.).

## II.    Parties' Requests for Dismissal and Leave to Amend

### A. Mobile County Sheriff's Office Motion to Dismiss

Plaintiff Martin did not name the Mobile County Sheriff's Office as a defendant in the style of the Complaint. (Doc. 1).  However, she did name it as a defendant in the body of the Complaint. (Id. at p.  2).  In her Causes of Action, Martin uses the plural "defendants" (Id. at p. 4-5), although using "defendant" in the singular, in her prayer for relief. (Id. at p. 5).

Sheriff Burch argues that the Mobile County Sheriff's Office is not a proper defendant as to either of Plaintiff Martin's claims, and should be dismissed as a matter of law. (Doc. 20 at p. 8-9, 11).  Martin did not respond to this argument. (Doc. 22).

The law in Alabama is well-settled that a County Sheriff's Office is not an entity subject to suit.  Williams v. Monroe County District Attorney, 702 Fed. Appx. 812, 813 (11th Cir. 2017) ("Under Alabama law, a county sheriff's department lacks the capacity to be sued.") (quoting Dean v. Barber, 951 F.2d 1210, 1215 (11th Cir. 1992) (citing White v. Birchfield, 582 So.2d

6

1085, 1087 (Ala. 1991)). Accordingly, to the extent that the Mobile County Sheriff's Office is named as a defendant, Sheriff Burch's Motion is **GRANTED** and the Mobile County Sheriff's Department is **dismissed**.

### B. Martin's Motion for Leave to Amend

### 1) Citation to Wrong Statute

Sheriff Burch argues that Plaintiff Martin sued him under the wrong statute.  He points out that 11 U.S.C. § 525(b), as alleged in the Complaint, applies to private employers, but 11 U.S.C. § 525(a) applies to governmental units.

In response, Martin argues that citing §525(b) was a technical error and that "the complaint plainly alleges discrimination by a governmental employer based on bankruptcy status and invokes the correct statutory purpose." (Doc. 22 at p. 2). Martin also argues that "Courts construe complaints to do substantial justice, particularly where the facts supporting the correct theory are fully pleaded." (Id.). And that the Court should construe her claim as brought pursuant to §525(a) and address the merits.

The Court agrees with Martin. She has sufficiently pled her bankruptcy discrimination claim against Sheriff Burch such that he has responded to that claim in his Motion for Summary Judgment.  Accordingly, the Court will consider Martin's bankruptcy discrimination claim as brought pursuant to § 525(a).

### 2) Individual Capacity

Sheriff Burch also argues as follow: Martin has sued him "only in his individual capacity" and that § 525(a) "does not allow for individual liability. The statute explicitly states 'a governmental unit' may not …terminate the employment of a debtor. By its terms it does not

7

leave room to impose individual liability." (Doc. 18 at p. 9).  Accordingly, he argues that the bankruptcy discrimination claim against him in his individual capacity should be dismissed (Id. at p. 10).

Martin concedes that she sued Sheriff Burch in his individual capacity (Doc. 22 at p. 3-4). She argues that this is a "contested area of law" and that "[t]o the extent this Court finds individual liability unavailable under § 525(a), Plaintiff respectfully requests leave to amend to assert the claim against Sheriff Burch in his official capacity as the governmental unit responsible for the employment decision." (Id. at p. 4) (citing Fed. R. Civ. P. 15(a)(2)).[1]

In reply, Sheriff Burch argues that "[e]ven if Martin were allowed to substitute" Sheriff Burch in his official capacity as a defendant for her first Cause of Action, "at this late stage of litigation, it would be futile. Her claim cannot survive against any employer because the undisputed evidence is that she was not terminated *solely* due to filing bankruptcy." (Doc. 23).

Martin fails to make any argument or cite any authority that §525(a) allows for individual liability.  The Court will not do her research for her.  Accordingly, Burch's motion for summary judgment on the bankruptcy discrimination claim in his individual capacity is **GRANTED**.

Alternatively, Martin moves to amend the complaint to assert the claim against Burch in his official capacity.  As explained *infra*, an amendment would be futile because the evidence is insufficient to sustain the claim.  Accordingly, the Motion to Amend is **DENIED**.

---

[1] At this stage of the litigation, after the deadline for amendments to pleadings, "a schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4)

8

### III.    Motion for Summary Judgment

### A. Standard for Summary Judgment

Summary judgment is granted in a case when "there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." FRCP R. 56(a). A fact is considered material when it has the ability to alter the outcome of the case. Zaben v. Air Products & Chemicals, Inc., 129 F.3d 1453, 1455 (11th Cir. 1997) (citing Anderson v. Liberty Lobby., 477 242, 248 (1986)).

Summary judgment functions as a means to discard claims or defenses that are not adequately supported by the facts. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). One purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see if there is a genuine need for trial." Advisory Committee Note to 1963 Amendment of Fed. Rule. Civ. Proc. 56(e).

A genuine issue for trial is nonexistent when a reasonable jury would not be able to find for the nonmoving party based on the facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp. 475 U.S. 574, 587 (citing First Nat. Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)). Although the facts are viewed in the most favorable light to the nonmoving party, the nonmoving party bears the burden of designating specific facts to show that a genuine issue to be solved at trial exists. Id. The nonmoving party must establish more than doubt regarding the material facts to proceed to trial. Id. at 587 (citations omitted). An alleged factual dispute will likewise be insufficient to establish a genuine issue of material fact. Anderson, 477 U.S. at 247-48 (1986).

Therefore, when the moving party meets their burden and the nonmoving party does not convincingly show a dispute of the facts, the motion for summary judgment shall be granted. FRCP R. 56(a). A motion for summary judgment is properly granted when the "pleadings,

9

depositions, answers to interrogatories, and admissions on file" are considered and relied upon in the decision. Celotex, 477 U.S. at 324.

**B. Analysis**

**1) Racial Discrimination in Violation of the Equal Protection Clause**

In her complaint, Martin brought a racial discrimination claim against Sheriff Burch for the termination of her employment under the Equal Protection Clause of the 14th Amendment pursuant to 42 U.S.C. § 1981. (Doc. 1). In Martin's Response to the Motion for Summary Judgment, Martin argues her Equal Protection claim pursuant to 42 U.S.C. § 1983. (Doc. 22 at p. 14- 20). The analysis for an Equal Protection claim pursuant to 42 U.S.C. § 1981 or 42 U.S.C. § 1983 are the same. Hornsby-Culpepper v. Ware, 906 F.3d 1302, 1312 n.6 (11th Cir. 2018) ("Employment discrimination claims against state actors for violation of the Equal Protection Clause are cognizable under §1983, and are subject to the same standards of proof and use the same analytical framework as discrimination claims brought under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981." (citations omitted)).[2]

The Equal Protection Clause of the 14th Amendment states: "[n]o State shall... deny any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. This is "essentially a direction that all persons similarly situated should be treated alike," and "simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty., 57 F.4th 791, 800–01 (11th Cir. 2022) (citations omitted.) "The Equal Protection Clause requires that the

---

[2] In Butts v. County of Volusia, 222 F.3d 891, 894 (11th Cir. 2000), the Eleventh Circuit determined that "§1981(c) makes clear that the section creates a right that private or state actors may violate but does not itself create a remedy for that violation." Instead, the remedy against a state actor is found in §1983.

government treat similarly situated persons in a similar manner." <u>Gary v. City of Warner Robins, Ga.</u>, 311 F.3d 1334, 1337 (11th Cir. 2002) (citation omitted).

There are variations of an equal protection claim. "Unequal application of facially neutral rules can result from either 'misapplication (i.e., departure from or distortion of the law) or selective enforcement (i.e., correct enforcement in only a fraction of cases).'" <u>Red Door Asian Bistro v. City of Fort Lauderdale</u>, No. 22-11489, 2023 WL 5606088, at *7 (11th Cir. Aug. 30, 2023) (quotation omitted). Equal protection claims based on selective enforcement require a similarly situated comparator. <u>Id.</u> However, when the equal protection claim is based on failure to correctly apply the law because of race, proof of a similarly situated comparator is not necessary. <u>Id.</u> at *8. But any claim under equal protection requires the plaintiff to show: (1) a discriminatory motive; and (2) a discriminatory effect. <u>Id.</u>

In their briefing neither party makes the distinction between the two types of equal protection claims. However, it appears that Martin is proceeding on a selective enforcement claim: Burch "engaged in unlawful discrimination against Plaintiff on the basis of her race in violation of the 14th Amendment to the United States Constitution by terminating her employment while declining to terminate a White employee who had also filed for bankruptcy protection." (Doc. 1 at p. 4). Thus, to establish her selective enforcement claim, Martin must "show disparate treatment compared to a similarly situated party, [even though] she is alleging discrimination based on a suspect classification." <u>Red Door Asian Bistro</u>, at *7 (citing <u>Young Apts. V. Town of Jupiter Fla.</u>, 529 F. 3d 1027, 1045-46 (11th Cir. 2006)).

### a. Prima Facie case

Faced with a defendant's motion for summary judgment, a plaintiff asserting an intentional-discrimination claim under…the Equal Protection Clause, or 42

U.S.C. § 1981…must make a sufficient factual showing to permit a reasonable jury to rule in her favor. She can do so in a variety of ways, one of which is by navigating the familiar three-part burden shifting framework established by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).

<u>Lewis v. City of Union City, Georgia</u>, 918 F.3d 1213, 1217 (11th Cir. 2019).

The first part of the burden-shifting framework requires the plaintiff to prove a prima facie case of discrimination. <u>McDonnell Douglas</u>, 411 U.S. 792, 802 (1973). The burden then shifts to the defendant to show a valid, nondiscriminatory reason for the adverse employment action experienced by the plaintiff. <u>Id.</u> Lastly, the burden shifts back to the plaintiff to show existing pretext to the employer's action. <u>Id.</u> at 804.

"The plaintiff's establishment of the prima facie case under *McDonnell Douglas* entitles her to a 'legally mandatory, rebuttable presumption' of illicit intent. *Id.* at 945 (internal quotation marks and citation omitted). But the failure to make the prima facie case does not automatically entitle the defendant to summary judgment." <u>Johnson v. Miami-Dade Cnty.</u>, 169 F.4th 1301, 1307 (11th Cir. 2026).

To establish a prima facie case, a plaintiff must show "(1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in questions, and (4) that her employer treated "similar situated" employees outside her class more favorably." <u>Lewis</u>, 918 F.3d at 1220-21 (citations omitted).

It is undisputed that Martin belongs to a protected class as a Black woman, she was subject to an adverse employment action when her employment was terminated, and that she was qualified to do her job.[3] Thus, the only element Martin needs to prove to establish a prima facie

---

[3] Martin holds a Bachelor's of Science degree in Human Resources and a Master's of Business Administration. (Doc. 17-1 at p. 3), (Doc. 17-2 at p. 6). Martin has previously held other financial positions in her previous jobs. <u>See</u> (Doc. 17-1 at p. 3-7), (Doc. 17-2 at p. 8).

case of discrimination is that her employer treated a similarly situated employee outside her class differently.

A proper comparator must be "similarly situated in all material respects." Lewis, 918 F.3d at 1226. A person is similarly situated with the plaintiff if they engaged in similar conduct, are subject to the same employment policies, have the same supervisor or have similar employment or disciplinary history. Id. at 1227-28. To establish a presumption of discrimination, the comparator must have been treated differently for the same conduct. Oirya v. Auburn Univ., 2019 WL 4876705 at *17 (M.D. Ala. Oct. 2, 2019), aff'd, 831 F. App'x 462 (11th Cir. 2020).

Here, Martin offered Erica Adams as a comparator. Adams is a White employee with the Mobile County Sheriff's Office. There appears to be no dispute that Adams had also filed bankruptcy. And Martin has presented evidence that Adams violated the chain of command rules when Martin was her supervisor.

However, Adams is not a proper comparator to Martin because they are not similarly situated. The similarities the two share are that they held positions in the Finance Department of the Mobile County Sheriff's Office, both have filed for bankruptcy and both may have violated the chain of command rules. However, there is no evidence that Adams submitted false information on her application. And while Martin avers that it was a mistaken omission[4], it nonetheless is a fact that she omitted from her application that she had been terminated from the DHR for theft of property, abuse of equipment, failure to perform properly, insubordination and

---

[4] Martin asserts that at the time she completed the MCSO applications her DHR removal was under appeal. There is no evidence of what appeal Martin is referring. However, the evidence of record is that the appeal decision of the State Personnel Board decision was issued in August of 2021. Martin's applications were submitted in 2022.

13

violation of confidentiality of records rules. Whether the omission was actually intentional is not the issue. The issue is whether Burch reasonably believed that the omission was intentional.

Martin also argues that because the termination was based on two charges, dishonesty charge and failure to pay just debts, that the "comparator analysis for bankruptcy charge does not depend on the application omission distinction at all." (Doc. 22 at p. 15). Martin's argument fails for two reasons. First, the recommendation of termination was based on both charges. Second, it is inaccurate to describe the second charge as based on the bankruptcy filing alone. The second charge was also based on "providing inaccurate and/or incomplete information during the hiring process". (Doc. 17-10 at p. 3-4).

Therefore, Martin has not established a prima facie case of discrimination because she did not prove that she was treated differently than an individual outside her protected class who was similarly situated in all material aspects. See Lewis, 918 F.3d at 1231 ("In sum, we hold that when a plaintiff relies on the *McDonnell-Douglas* burden-shifting framework to prove an intentional-discrimination claim using circumstantial evidence, she must demonstrate—as part of her *prima facie* case—that she was treated differently from other individuals with whom she was similarly situated in all material respects.").

### b. Convincing Mosaic

Usually if a plaintiff cannot succeed under the McDonnell Douglas framework, a plaintiff may be able to pass the summary judgment stage by presenting circumstantial evidence that creates a triable issue of the employer's discriminatory intent. Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011) ("However, establishing the elements of the McDonnell Douglas framework is not…the *sine qua non* for a plaintiff to survive a summary judgment motion in a an employment discrimination case…Rather, the plaintiff will always survive…if he

14

presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent.").   But in this case, the requirement of a similarly situated comparator for a prima facie case and a required comparator to establish a selective enforcement equal protection claim merge.   In other words, since Martin is unable to point to a comparator the analysis ends.

However, in an abundance of caution that Martin might be attempting to assert an equal protection claim for "misapplication" of the law based on her race, the court will continue with the analysis.

"A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff presents "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker."" <u>Id.</u> (quoting <u>Silverman v. Board of Educ. Of City of Chicago</u>, 637 F.3d 729, 734 (7th Cir. 2011)). A convincing mosaic can be proved by evidence of (1) suspicious timing, ambiguous statement, (2) better treatment of similarly situated employees, and (3) pretext. <u>Lewis v. City of Union City, Georgia</u>, 934 F.3d 1169, 1185 (11th Cir. 2019) (citation omitted).   And evidence of better treatment of similar situated employees includes

> all evidence of disparate treatment, even if there are material differences between the plaintiff and the comparators. At this stage in the analysis, the extent of the material differences only influences "how much weight the comparator evidence should be given." *See Tynes*, 88 F.4th at 947. The failure to meet the *Lewis* standard does not render comparator evidence irrelevant to the ultimate summary judgment inquiry. *See id.* ("[I]t is possible that [plaintiff's] comparators were insufficient to establish a prima facie case yet still relevant to the ultimate question of intentional discrimination.").

<u>Johnson v. Miami-Dade Cnty.</u>, 169 F.4th at 1310.

15

Martin relies on the following arguments to show that there is sufficient evidence for a reasonable jury to find that Burch's reason for terminating Martin was based on her race: 1) Adams who is white was not terminated despite the fact that she had also filed bankruptcy; 2) whether Martin's omission of her termination from DHR for theft and other misconduct was intentional is a disputed fact; and 3) "the DHR employment history was in Defendant's possession before [Martin] was hired" and was not treated as disqualifying "during Burch's late-2022 meeting with [Martin]".  (Doc. 22 at p. 12-13).

Martin's contention that the DHR employment history was in "Defendant's" possession before Martin was hired is not supported by the evidence.  First, Martin was not hired by Burch, who is the Defendant in this case.  It is true that the evidence indicates that when Martin was hired that it had been discovered that she worked for DHR at some point.  And Martin had disclosed the employment with DHR on her application to the MCPB (where she also swore under oath that she left voluntarily).  However, there is insufficient evidence from which a reasonable jury could infer that it was known at the time of her hire, or her meeting with Burch, that she had been terminated from DHR for theft and other misconduct.  And Burch's alleged reference to "a paper" about her DHR employment is insufficient evidence to prove Martin's contention.

Martin next contends that the fact Adams was not terminated even though she also filed bankruptcy and violated the chain of command is evidence that Burch intentionally discriminated against her based on her race.  If the filing of bankruptcy and violating the chain of command was the sole reason for Martin's termination, she would survive summary judgment.  However, Martin greatly simplifies the basis for her termination as to the second charge.  Putting aside the first charge of dishonesty, the second charge of engaging in acts contrary to the good of the

16

service included omitting relevant information to the handling of large amounts of money; demonstrating through personal bankruptcies [] and vehicle repossession an ability (sic) to handle financial matters"; and engaging in disruptive behavior including failure to cooperate with her supervisor and attempting to undermine her supervisor and making unsupported allegation against her supervisor. (Doc. 17-10). In other words, no reasonable jury could find intentional racial discrimination based on a comparison to Adam's situation.  The conduct for which Martin was terminated primarily involved failing to disclose her termination for theft while she was a fiscal officer.

This brings us to Martin's contention that her omission of her termination was not intentional.  The inquiry is what the employer believed, not on whether in fact the omission was an honest mistake. "The pretext inquiry centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside the decision maker's head." Akridge v. Alfa Ins. Companies, 93 F. 4th 1181, 1196 (11th Cir. 2024) (quoting Todd v. Fayette Cnty. Sch. Dist., 998 F.3d 1203, 1218 (11th Cir. 2021).

An investigation and a disciplinary board determined that the omission was intentional. This disciplinary board recommended termination to Sheriff Burch.  There is simply insufficient evidence for a jury to infer that Burch did not reasonably believe that Martin's failure to disclose her termination was intentional or that he did not reasonably rely on the disciplinary board's determination of such.  Specifically, when Martin disclosed the DHR employment in her applications to MCPB, she specifically claimed she left the DHR job for a change in career direction, to better utilize her degrees and because the DHR job had limited opportunities for advancement.  Then she failed to disclose she was ever employed by DHR in her direct

17

application to the Sheriff.  When it was discovered why she was terminated, it is reasonable that Sheriff Burch would believe that her omission of her employment at DHR was intentional.

In sum, Martin's contentions fail for lack of evidence.  As such there is insufficient evidence from which a reasonable jury could find that Sheriff Burch terminated Martin based on her race.   Accordingly, summary judgment is **GRANTED** on this claim.

### 2) Bankruptcy Discrimination Claim

Under the Bankruptcy Code, "a governmental unit may not . . . terminate the employment of . . . a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act . . . solely because such bankrupt or debtor is or has been a debtor." 11 U.S.C. § 525(a). "The term "governmental unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States…a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state…" 11 U.S.C. § 101(27). In F.C.C. v. NextWave Pers. Commc'ns Inc., the Supreme Court clarified that bankruptcy must alone be the proximate cause of the adverse employment action, or that the bankruptcy was the triggering event for the action taken by the governmental agency. F.C.C. v. NextWave Pers. Commc'ns Inc., 537 U.S. 293, 301-02 (2003).

> In the more usual Section 525(a) action, it is unlikely that the defendants would admit that the only reason for their action was that a plaintiff had filed bankruptcy. The trier of fact "must look to the objective evidence presented and draw reasonable inferences from that evidence as to the subjective intent of the parties involved."

In re Potter, 354 B.R. 301, 309-10 (Bankr. N.D. Ala. 2006)(quotation omitted).

Martin claims that Rosier's finding that Martin filed for bankruptcy before her employment with the Mobile County Sheriff's Office was the sole reason for her termination. Martin argues the other reasons stated by Burch are pretextual and argues because the non-

18

bankruptcy reasons are pretextual, the bankruptcy becomes the "operative cause."  (Doc. 22 at p. 11).

As explained supra, Martin has failed to sustain her burden to show that Burch's reason for termination to include dishonesty was pretext for racial discrimination.  Therefore, no genuine issue of material fact exists where a reasonable jury could determine Martin's bankruptcy was the proximate cause or triggering event of her termination from Mobile County Sheriff's Office. Summary Judgment on this claim is **GRANTED**.

**IV.    Conclusion**[5]

In conclusion, the Defendant Sheriff Paul Burch's Motion for Summary Judgment and Motion to Dismiss the Mobile County Sheriff's Office is **GRANTED**, and Plaintiff Meiko Martin's Motion for Leave to Amend Complaint is **DENIED.** Final judgment will be entered as a separate document pursuant to Fed. R. Civ. P. 58(a).

**DONE** and **ORDERED** this  **22nd day** of **May 2026.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

[5] Even if Sheriff Burch did not succeed on the merits of his Motion for Summary Judgment on the Equal Protection claim, Sheriff Burch is entitled to qualified immunity. "Qualified immunity provides protections for government officials performing discretionary functions and sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." Brannon v. Finkelstein, 754 F.3d 1269, 1278 (11th Cir. 2014) (quoting Stork v. City of Coral Springs, 354 F.3d 1307, 1313 (11th Cir. 2003). Sheriff Burch acted in his discretionary authority when he terminated Martin's employment with the Mobile County Sheriff's Office. As discussed herein, Martin has failed to present sufficient evidence that Sheriff Burch violated Martin's statutory or constitutional rights. Therefore, Sheriff Burch is entitled to qualified immunity.